JUNEAU COUNTY STATE BANK, Appellant, vs. STATE BANK OF MAUSTON, Respondent.

*September 19—October 16, 1923.*

*Mortgages: Covenant to maintain insurance for mortgagee's benefit: Policy taken in name of mortgagor: Equitable lien on proceeds: Assignment of proceeds to third person with notice of lien: Estoppel: Evidence: Sufficiency.*

1. Where a mortgagor agrees to take out fire insurance for the benefit of the mortgagee, but takes it in his own name, the mortgagee is entitled, as between himself and the mortgagor, to an equitable lien on the money due on the policy, though the policy makes the money payable to the mortgagor.

2. Where it is claimed that the evidence does not sustain the findings of fact of the trial court, it is the duty of the supreme court to review the testimony; but it will attach great weight to the findings of the court.

3. In an action by the mortgagee under a first mortgage against the mortgagor's assignee of the proceeds of a fire insurance policy taken out by the mortgagor in his own name, the evidence is *held* not to sustain a finding that such assignee took without notice that the mortgagee had an equitable lien on the proceeds because of the mortgagor's agreement to insure the property for the benefit of the mortgagee.

4. The assignee, who took the assignment with notice that the mortgagor had failed to comply with the covenant in the mortgage relating to insurance, could not acquire by the assignment any greater right than the mortgagor had.

5. The mortgagee, who had intrusted the policy to the mortgagor on his promise to secure a new policy for the benefit of the mortgagee, did not lose its right to assert an equitable lien on the proceeds of the policy taken in the name of the mortgagor by failure to discover the default of the mortgagor for a period of nearly six months.

APPEAL from a judgment of the circuit court for Juneau county: E. W. CROSBY, Circuit Judge. *Modified and reversed.*

Action to foreclose a mortgage for nonpayment of interest and part of principal and to establish the right of plaintiff to a sum of money in the hands of the Lindina Town

Insurance Company. The complaint alleged two causes of action.

The first cause of action alleged the execution of four promissory notes of $500 each by defendant Steckling to the plaintiff and the giving of a mortgage on certain described premises as collateral security. The mortgage was in the usual form, containing a clause giving the bank the right to declare the whole sum due for failure to pay interest or an instalment of principal, and a clause requiring the mortgagor to keep the buildings insured in the sum of $2,000 or over; the policies to be payable to plaintiff and to be in the possession of plaintiff. It was then alleged that Steckling had failed to pay $500 of principal due on January 31, 1921, and the interest on $2,000 due on that date. Judgment of foreclosure was asked.

The second cause of action alleged, in addition to the foregoing, that after the making of the mortgage Steckling secured insurance policies which contained a clause providing for payment to the mortgagee in case of loss, and delivered them to plaintiff; that on March 2, 1921, these policies expired and Steckling took out two new policies in the Lindina Town Insurance Company, one for $4,050 and the other for $3,800, but that he failed to have attached to them the mortgage clauses providing that the loss if any should be paid to plaintiff. It was then alleged that on March 27, 1920, Steckling and his wife gave a mortgage in the sum of $2,800 to the defendant *State Bank of Mauston* on the premises in question, the mortgage containing a clause making it subject to the first mortgage; that on January 8, 1921, another mortgage in the sum of $1,000 was given to defendant bank; that these mortgages contained covenants on the part of the mortgagor to insure for the benefit of the mortgagee in the sums of $1,800 and $1,000 respectively; that on the 29th of August, 1921, the buildings were totally destroyed by fire.

It was further alleged that the defendant bank had actual notice of plaintiff's mortgage and the clause therein relative to insurance before Steckling's mortgage to it was executed; that notwithstanding, the defendant bank procured certain assignments of the money due on the policies and now claims to be entitled thereto. Judgment was asked declaring that plaintiff had an equitable lien on the money in the hands of the insurance company to the extent of plaintiff's mortgage.

The *State Bank of Mauston* answered, in substance, that it had knowledge of the prior mortgage of plaintiff, but denied that it had any knowledge of the insurance clauses above mentioned, and alleged that in September, 1921, defendant, for the purpose of securing the amount it had advanced on the mortgages, procured assignments to it of the money due on the policies.

It appeared in evidence that each of the mortgages was recorded soon after its execution; that Winsor, president of the defendant bank, had been register of deeds and was familiar with the printed mortgage forms used by both banks; and that the mortgaged premises had little value apart from the buildings and personal property. Winsor testified that he knew of the $2,000 mortgage to plaintiff, but knew nothing about the insurance policies protecting the loan; that "he had every reason to believe they had one;" that after the fire, when he was figuring up Steckling's assets and liabilities, he included, in addition to the policies actually issued, one for $2,000 which he thought the plaintiff bank held; and that he did not know, until Steckling told him, that the plaintiff bank had no policy.

Steckling testified that when he gave the mortgage to the defendant bank he told Winsor that he had two policies at the other bank.

The trial court found that the defendant bank had no actual notice of the insurance clause in plaintiff's mortgage; that the president supposed the plaintiff bank had a policy

for its protection; and that the plaintiff bank was guilty of laches in remaining without the insurance policies.

Judgment was entered ordering the indebtedness of defendant bank to be first paid out of the insurance money.

For the appellant there was a brief by *McFarlane & Loomis* of Mauston, attorneys, and *H. H. Thomas* of Madison, of counsel, and oral argument by *Mr. Thomas* and *Mr. C. G. Mathys* of Madison.

For the respondent *State Bank of Mauston* there was a brief by *Grady, Farnsworth & Walker* of Portage, and oral argument by *W. H. Farnsworth*.

JONES, J. The mortgagor charged himself with the duty to take out insurance for the benefit of the plaintiff, and was not absolved from that duty by his failure so to do nor by taking insurance in his own name. It is agreed by counsel for both parties that in such a case the mortgagee, as between himself and the mortgagor, is entitled to an equitable lien upon the money due on the insurance policy, although it is made in terms payable to the mortgagor. This is the well settled rule. *Lichtstern v. Forehand, ante,* p. 216, 194 N. W. 421; *Butson v. Misz,* 81 Oreg. 607, 160 Pac. 530; 4 Cooley, Ins. 3703, and cases cited.

But it is claimed by the defendant bank that since it held existing policies at the time of the fire, any lien the plaintiff may have had was lost when the mortgagor assigned his interest in the insurance moneys payable on the policies taken in his own name. Plaintiff's counsel claim the prior right to this fund, first, because the defendant bank had constructive notice of the equitable lien, and second, because it had actual notice and therefore took the assignment subject to plaintiff's rights; that since notice of the prior mortgage was conceded, notice of its contents must be imputed. To this proposition the following authorities are cited: *Brinkman v. Jones,* 44 Wis. 498; *Pringle v. Dunn,* 37 Wis. 449; *Gibbes M. Co. v. Niagara F. Ins. Co.* 119 S. C. 1, 111 S. E.

434    SUPREME COURT OF WISCONSIN.    [Oct.

Juneau Co. State Bank v. State Bank of Mauston, 181 Wis. 430.

805; *Keller v. Fenske,* 123 Wis. 435, 101 N. W. 378, 1055; *Dailey v. Kastell,* 56 Wis. 444, 14 N. W. 635; *Weeks v. M., L. S. & W. R. Co.* 78 Wis. 501, 47 N. W. 737; *Perkinson v. Clarke,* 135 Wis. 584, 116 N. W. 229; Warvelle, Abstracts (4th ed.) § 355.

Respondent's counsel argue that these cases only hold that a recorded mortgage is notice of all its contents so far as they fall within the line of the chain of title and that the insurance clause in plaintiff's mortgage was merely a collateral covenant not running with the land. To support this proposition they cite among other authorities: 1 Jones, Mortgages (5th ed.) §§ 400, 524, 574; *Perkins v. Perkins,* 173 Wis. 421, 180 N. W. 334, 181 N. W. 812; *Ely v. Wilcox,* 20 Wis. 523; *Pierce v. Kneeland,* 16 Wis. 672; *Hartung v. Witte,* 59 Wis. 285, 18 N. W. 175; 1 Joyce, Ins. § 23; *Farmers L. & T. Co. v. Penn P. G. Co.* 186 U. S. 434, 22 Sup. Ct. 842, 46 Lawy. Ed. 1234; *Columbia Ins. Co. v. Lawrence,* 10 Pet. 507; *Stearns v. Quincy Mut. F. Ins. Co.* 124 Mass. 61; and they call especial attention to two New York cases, *Reid v. McCrum,* 91 N. Y. 412, and *Dunlop v. Avery,* 89 N. Y. 592. This raises an interesting question, which in view of our decision on another ground it is unnecessary to discuss or decide.

Did the respondent have actual notice of the plaintiff's equitable lien? The negotiations concerning respondent's two mortgages seem to have been principally carried on by Steckling, the mortgagor, and Winsor, the president of defendant bank. Winsor stated repeatedly in his testimony that he had no notice whatever of the insurance clause in plaintiff's mortgage, but on cross-examination, when asked if the mortgagor said when respondent's first mortgage was executed that he had $2,000 insurance, stated that he could not answer that; nor could he answer whether anything was said about the amount of insurance Steckling had, but he testified that something might have been said about it.

The mortgagor, Steckling, testified that when the first

mortgage to defendant bank was executed Winsor asked him where his policies were and what he carried and that he told him he carried $2,800 and that the policies were at the *Juneau County Bank;* that he had gone after the policies to get new ones. This was about the time the new policies were issued.

There are conceded facts and circumstances which seem to us to have an important bearing on the question. When the mortgagor caused the plaintiff's policies to be canceled and took out two new policies he caused the policies to be issued in his own name for $4,800, although $500 covered cheese and is not here involved. The plaintiff's mortgage called for $2,000 insurance and the respondent's mortgages called for $2,800 of insurance. The sum of $4,800 was the same amount that would be reached by adding the amount called for in all the mortgages, and the president of the defendant bank inserted the amounts of $1,800 and $1,000 in the mortgages.

It is conceded that both banks used the same blank form of mortgage; and that these blanks contained printed clauses calling for insurance. The value of the real estate was made up almost wholly by the buildings. Winsor testified that he assumed at all times until after the fire that the plaintiff had insurance and that he had every reason to believe that it had a policy. These attending circumstances seem to us to be quite significant on the question of notice and to strongly corroborate the positive testimony of Steckling.

We assume that the case was fairly tried before an impartial judge and we do not fail to realize the very great weight to be given his findings on matters of fact. But the case is before us and it is our duty to review the testimony. If the decision rested alone on the evidence of the two principal witnesses, we should feel bound to concur in the findings of the trial court, although the testimony of one witness was positive and that of the other was somewhat weakened by admissions in his cross-examination. But we are con-

vinced that the trial judge did not give sufficient consideration to the conceded facts and surrounding circumstances already stated.  As to these facts there was no conflict and no demeanor of witnesses to be considered.  After a careful examination of all the evidence we are forced to hold that the finding of the court as to actual notice was contrary to the clear preponderance of the evidence, and that the defendant bank was charged with notice of the equitable lien of the plaintiff.

After the fire the mortgagor, by an order on the insurance company, assigned all his interest in the insurance fund, and the question is presented whether this order cuts off the equitable lien of the plaintiff of which the respondent had notice.

Respondent's counsel urge and cite cases to the effect that the plaintiff had only a latent equity and that it could not avail against the assignment of his interest in the fund by the mortgagor.  Whatever might be the rule if the respondent had taken its policies and the order of assignment without notice, we consider that it has no application in the case before us.  It is conceded that plaintiff had as against the mortgagor, who had failed to comply with his contract, an equitable lien.  Since this was known to respondent, it could not acquire by the assignment of a non-negotiable chose in action any greater right than that of the mortgagor.  The lien of the plaintiff was no longer latent after knowledge by respondent.

The trial court found that the plaintiff had lost its right to assert its lien by neglect in failing to keep alive the policies securing its mortgage.  It must be admitted that by intrusting its policies to the mortgagor on his promise to secure a new one for its benefit and by failing to discover his default for the period of nearly six months, the plaintiff failed to use the diligence required by good business methods.  The same is true as to the respondent, which al-

lowed a year or more to elapse after taking its mortgage before getting possession of any insurance policies. Both parties seemed to assume that the mortgagor would comply with the agreement he had made as to insurance and we do not think that either should be penalized because of overconfidence in the mortgagor.

Respondent's mortgage called for insurance in the sum of $2,800; that of the plaintiff called for insurance in the sum of $2,000. The fire loss on the buildings and improvements was adjusted in the sum of $4,300. We have reached the conclusion that in the distribution of this fund the plaintiff is entitled to $2,000, and the respondent to the balance, and that the judgment should be modified accordingly.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with the opinion.